**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| GINA R. SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CV-213 JVB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Gina R. Sanchez seeks judicial review of the final decision of the Defendant Commissioner of Social Security who denied her application for disability benefits under the Social Security Act. For the following reasons, the Commissioner's final decision is affirmed.

**A.    Procedural History**

Sanchez first filed her application for Social Security disability benefits on April 3, 2000, with an onset date of March 30, 2000. (R. 44). That application was denied initially on July 6, 2000, and on reconsideration on October 5, 2000. Administrative Law Judge Steven Neary issued an unfavorable decision on September 27, 2001. (R. 50). The Appeals Council remanded the case for further review by an ALJ. Sanchez filed a second application in November 2001. She was represented by counsel and testified at a hearing held on June 7, 2001. (R. 44). These two applications were consolidated and denied in a January 2004 decision. (R. 54). The Appeals Council denied her request for review on July 2, 2007. (R. 4). She filed again on

1

February 11, 2004, for Title II disability insurance benefits and Title XVI supplemental security income, with an onset date of March 30, 2000. (R. 13). On May 16, 2006, ALJ Bryan Bernstein denied reopening of the previous application and issued an unfavorable decision on February 21, 2007. (R. 10, 13). The Appeals Council denied review on April 2, 2004, so ALJ Bernstein's decision stands as the final determination. (R. 13).

**B.     Factual Background**

Sanchez was 46 years old on the date of the ALJ's decision. (R. 78). She received her high school diploma in 1982 (R. 103) and worked as a factory laborer from 1988 to 2000. (R. 95). She claims she can no longer work because of back pain and depression. (R. 390). In addition, she indicated that she has fibromyalgia, high blood pressure, and asthma. (R. 399). She is overweight and easily confused. (R. 395–96). Sanchez is able to lift a gallon of milk, but has to alternate sitting and standing because of the pain and has trouble with stairs. (R. 401).

**(1)     *Medical Evidence — Physical***

On December 12, 2001, lumbar radiographs showed degenerative spurring at T11-12, L2-3, L3-4, L4-5, and L5-S1 levels, and space narrowing at L3-4, L4-5, and L5-S1. (R. 302). These radiographs showed no signs of acute fracture, malalignment, pars defect, or problems with the pedicles. (R. 302). A few weeks later, Sanchez reported to her therapist that she had gained at least 100 pounds in the past year. (R. 143). In June 2002, Robert M. Shugart, M.D., and orthopaedist, examined Sanchez and diagnosed her with degenerative disk disease in her lower back. (R. 146). However, he did not believe she was a candidate for surgical intervention,

2

and gave her no restrictions. (R. 146). In a letter written to Indiana Legal Services in December 2003, Dr. Shugart indicated that he suspected that Sanchez would qualify for sedentary work with sit/stand option, and no repetitive bending or twisting. (R. 146).

Sanchez received repeated epidural nerve block injections from anesthesiologist Dr. Bojrab in her lower back from December 2002 through January 2006. (R. 163–76, 320–33). On April 28, 2004, Dr. Bojrab noted that Sanchez had a positive straight leg raise at 40 degrees. (R. 189). On June 11, 2004, Daryl L. Hershberger, M.D., opined that Sanchez was unable to do any work because of her chronic pain. (R. 191–92). In June and July 2004, J. Sands, M.D., and T. Crawford, M.D., reviewed all the evidence in Sanchez's file and opined that, while Sanchez was obese and had some low back tenderness, she could perform light work. (R. 219–26). Sanchez went to Parkview Noble Hospital on October 22, 2004, and was diagnosed with asthma and bronchitis. (R. 244). On June 27, 2005, Dr. Hershberger diagnosed Sanchez with lower back pain, fatigue, and malaise. (R. 344). Neurosurgeon Isa S. Canavati, M.D., examined Sanchez and reviewed a recent MRI in September 2005. (R. 319). The doctor concluded that a disc fragment in Sanchez's lower back did not impinge on the exiting nerve roots. (R. 319). During that exam, Sanchez's straight leg raise was negative, but she had some tenderness in her back and limited motion of the lumbar spine. (R. 319).

Sanchez was admitted to the Parkview Noble Hospital emergency room for lower back pain on February 2, 2006. (R. 229). On March 24, 2006, Dr. Hershberger indicated that Sanchez was limited to sedentary work with a sit/stand option, no overhead reaching, and two or three unscheduled breaks during a typical work shift. (R. 371–75). Dr. Hershberger also concluded that Sanchez's seeing, hearing, speaking, hand manipulation skills, attention, and

3

concentration were not limited or otherwise affected. (R. 373–74). On June 10, 2006, Dr. Shugart operated on Sanchez's lower back to relieve leg pain, and prognosis was good after surgery. (R. 378–79). The record contains only the hospital surgical report. (R. 377–85).

**(2)**     *Medical Evidence — Mental*

On June 2, 2003, Kulwinder Singh, M.D., examined Sanchez and diagnosed Major Depressive Disorder, recurrent, severe; Panic Disorder without Agoraphobia; and General Anxiety Disorder. (R. 160). Sanchez reported panic attacks, poor concentration, and general depression. (R. 158–60). Dr. Singh reported that Sanchez could recall one word out of three after five minutes, and could recall four digits forward and three digits backward. (R. 159).

When Sanchez applied for benefits a third time on February 4, 2004, her mother, Marylyn McComb, reported that a typical day for Sanchez went as follows: wake up, bathe, rest, straighten up her house, talk on the phone, dust or do laundry, lunch, lay down, dinner, read, watch television, email, go to bed. (R. 105). McComb reported that some days, Sanchez felt poorly and never got out of bed. (R. 105, 108). McComb also reported that Sanchez closed her checking account because she could not concentrate to balance it and sent checks to the wrong companies. (R. 108). Sanchez reported that she was nervous and panicky around people, could not concentrate, and could not drive long distances because she would panic and become confused. (R. 116–17).

In May 2004, Robert J. Walsh, Psy.D., examined Sanchez. (R. 178). He diagnosed Major Depressive Disorder, recurrent, moderate and Panic Disorder without Agoraphobia. (R. 180). Sanchez complained of panic attacks, cold sweats, nausea, dizziness and anxiety. (R. 178).

4

Dr. Walsh rated her global assessment of functioning at 59.[1]  (R. 180).

In June 2004, K. Neville, Ph.D., reviewed Sanchez's record.  (R. 204–18).  On the Mental Residual Functional Capacity ("MRFC") worksheet, Dr. Neville concluded that Sanchez had a few moderate limitations.  (R. 215).  In that same MRFC, Dr. Neville concluded that Sanchez "retains capacity to carry out simple tasks in a compatible setting."  (R. 217).  On March 24, 2006, Dr. Hershberger concluded that Sanchez's symptoms were not severe enough to interfere with attention and concentration.  (R. 374).  In addition, he indicated that Sanchez would most likely only miss about one day of work per month as a result of her impairment or because of her treatment.  (R. 375).  In April 2006, Jeanne Harber Porter, a social worker, opined that because of Sanchez's reported health problems and depression, she would be unable to successfully manage employment.  (R. 366).  In June and July, Drs. Sands and Crawford indicated on another state agency form that Sanchez had a light residual functional capacity ("RFC"), which entails up to ten pounds frequent lifting, up to twenty pounds occasional lifting, up to six hours standing/walking, and up to six hours sitting.  (R. 220–26).  The only limitation these doctors reported was that Sanchez should not climb ropes or scaffolds.  (R. 221).

On February 14, 2006, Sanchez reported to her therapist, Porter, that she was having anxiety attacks.  (R. 354).  However, Sanchez also stated that she was content to be where she was in her life at that time.  (R. 354).  On April 4, 2006, Porter completed another MRFC, indicating that she thought Sanchez had severe limitations performing activities within a schedule (for example, maintaining punctual attendance) and in sustaining an ordinary routine

---

[1] A GAF of 51 to 60 is the moderate range of symptoms or functional limitations; a GAF of 61 to 70 is the mild range.

without special supervision. (R. 367).

**(2)      Testimony at the Administrative Hearing**

At the May 19, 2006, administrative hearing, Sanchez testified that she "get[s] too confused" to drive anywhere anymore. (R. 395). She also said that she is overweight because of her medications. (R. 396). Sanchez noted that she had constant back pain everyday, and that it was "stabbing, burning, aching, dull pain." (R. 398). She testified that this pain continued down her right leg. (R. 398). Sanchez mentioned that she laid down about six hours a day, and that she had to change positions frequently to stay comfortable. (R. 399, 401). She stated that she was depressed, had trouble concentrating, and that sometimes she got "panicky." (R. 400).

At the hearing, Sanchez's mother, McComb, testified that Sanchez was not able to get around very well and that McComb had to take her to all her appointments. (R. 403). Finally, a vocational expert, Robert Barkhaus, testified as to potential employment in the area for someone with Sanchez's physical and mental limitations. (R. 404). He indicated that while she may not be able to continue working in the same line of work she had done in the past, there were many other types of work near her home which she could do. (R. 405). For example, Barkhaus reported about 200 laundry folder jobs, 500 cashiering jobs, 100 document preparer or copier jobs, 150 surveillance monitor jobs, and 100 telephone quotation clerk positions in the northeast Indiana region. (R. 405). On cross examination, Barkhaus stated that if a person were limited as Porter, the social worker, indicated, with severe limitations performing activities within a schedule and in sustaining an ordinary routine without special supervision, that person would not be able to perform the jobs he listed earlier. (R. 367, 408). The ALJ found that there was a

significant number of jobs in the region that she could perform and therefore Sanchez was not disabled within the meaning of the Social Security Administration. (R. 24, 25).

**C.     Standard of Review**

Section 405(g) of the Social Security Act grants the district court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Therefore, the "issue before this court is whether the ALJ's findings were supported by substantial evidence, not whether [Sanchez] is disabled." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

**D.     Discussion**

**(1)** *Legal Framework*

Under the Social Security Act, a claimant is entitled to Disability Insurance Benefits if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). To be disabled, a person's impairments must be so severe that she is "not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether Sanchez is disabled as defined by the Act, ALJ Bernstein conducted a five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

**(2)** *The ALJ's Decision*

In a written decision issued on February 21, 2007, ALJ Bernstein determined that Sanchez was not disabled. (R. 25). The ALJ decided in Sanchez's favor in steps one and two, but found that she did not meet a listing in step three. (R. 17). The ALJ then ascertained that Sanchez had the following RFC:

> [Sanchez] would be able to lift and carry twenty pounds occasionally and ten pounds frequently. She would be required to sit and stand while working, and her relevant impairments would prevent standing and walking more than 50% of an eight hour workday. The claimant cannot reach extreme postures . . . more often than occasionally. The claimant cannot work in atmospheric concentrations of dust, smoke, and chemical fumes that would not be as comfortable as ordinary retail, commercial environments. The claimant is not able to perform work that imposes a closely regimented pace of production.

(R. 19).

On the basis of this RFC, the ALJ found at step four that Sanchez was unable to perform any past relevant work. (R. 23). However, the ALJ found that Sanchez remained capable of performing a restricted range of work activity. (R. 18). Relying on the testimony of the vocational expert, the ALJ found at step five that Sanchez was capable of performing work in the national economy as a laundry folder, cashier, telephone quotation clerk, document

9

preparer/copier and surveillance system security monitor. (R. 24). Therefore, Sanchez was not entitled to a period of disability or Disability Insurance Benefits. In reaching this decision, the ALJ concluded that Sanchez's testimony should be given little weight because the claimant was unreliable and tended to exaggerate her problems so that her presentation at the hearing was not consistent with the objective evidence. (R. 18).

Sanchez argues four grounds for reversal: (1) the ALJ's mental findings were not supported by substantial evidence; (2) the ALJ's RFC was not supported by substantial evidence; (3) the ALJ's credibility analysis was not supported by substantial evidence; and (4) the ALJ impermissibly ignored evidence that was favorable to claimant. The Court will address each argument in turn.

**(3)** *The ALJ's Findings were Supported by Substantial Evidence*

(a) *Mental Findings*

Analysis of a mental impairment is controlled by 20 C.F.R. §404.1520a., which involves using a special technique at each level of the administrative review process. 20 C.F.R. §404.1520a(a). To rate the degree of functional limitation, four areas (the "B criteria") should be assessed: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §404.1520a(c)(3). If the claimant's mental impairment is severe, the ALJ should determine whether it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. §404.1520a(d)(2). If the claimant does not meet or equal a listing, the claimant's MRFC must be assessed, and the "B criteria" are no longer relevant. 20 C.F.R.

§404.1520a(d)(3).

First, Sanchez argues that the ALJ's assessment of a mild mental impairment conflicts with evidence of poor concentration. However, the ALJ made this finding as part of a "B Criteria" analysis and therefore the finding is used only to rate the severity of mental impairment at steps 2 and 3 of the sequential evaluation process in determining whether claimant meets a listing. (R. 22–23). The "B criteria" are not used in an RFC assessment. S.S.R. 96–8p. Sanchez does not argue that she meets or equals a listing, so these criteria are inapplicable.

In addition, there is substantial evidence to support the ALJ's finding that Sanchez has only a mild impairment of concentration. Consultative psychological examiner Dr. Walsh rated Sanchez's GAF at 59, reflecting moderate-bordering-on-mild symptoms. (R. 180). Reviewing psychologist Dr. Neville opined that Sanchez retained the "capacity to carry out simple tasks in a compatible setting." (R. 217). Treating physician Dr. Hershberger opined that Sanchez's symptoms were not severe enough to interfere with attention and concentration. (R. 374). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart* 390 F.3d 500, 503 (7th Cir. 2004).

Sanchez testified that she was easily confused, but the ALJ deemed her testimony to be not credible, and because this determination was supported by substantial facts in the record, it will not be disturbed. Sanchez's mother also claimed that Sanchez had poor memory and concentration. However, there was substantial evidence to support the ALJ's determination that Sanchez only had a mild impairment of concentration/attention.

Dr. Hershberger opined that Sanchez's physical symptoms would not interfere with her

11

concentration or attention, and Dr. Walsh reported that Sanchez had good concentration and attention. While Dr. Neville opined that Sanchez had moderate limitations in maintaining concentration, persistence or pace, he also noted that Sanchez was not significantly limited in remembering work procedures, or in understanding, remembering, and carrying out very short and simple directions. (R. 215–16). Dr. Neville continued that Sanchez was able to make simple work-related decisions, sustain an ordinary routine, and in general to interact socially with others. This is substantial evidence that Sanchez's concentration/attention impairment was only mild. Additionally, the ALJ considered the mental findings in determining the RFC.

Second, Sanchez argues that the ALJ failed to quantify the extent of Sanchez's panic attacks. Panic attacks themselves can indeed be disabling. However, the ALJ considered this when he found that a compatible setting for Sanchez was one where the pace of production was not closely regimented.

Third, Sanchez argues that the ALJ erred because he did not consider and address all medical opinions. However, the ALJ is not required to discuss every piece of evidence, but only to articulate his rationale sufficiently to allow meaningful review. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987). According to SSR 96–8p, the adjudicator should base his RFC determination on all the relevant evidence in the record, including medical history, lab findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, evidence of attempts to work, need for structured living environment, and work evaluations, if available. "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467,

470 (7th Cir. 2003).

Treating physician and family practitioner Dr. Hershberger indicated in a letter that the claimant was "totally disabled." (R. 191). However, the ALJ correctly stated that the finding of "disabled" is the ultimate issue reserved to the Commissioner. (R. 20). The ALJ did use Dr. Hershberger's examination notes to formulate Sanchez's RFC. For example, Dr. Hershberger noted that Sanchez was able to lift up to ten pounds, and could occasionally climb ramps/stairs, balance, kneel, crouch, crawl, or stoop. (R. 20). He repeatedly commented that she was "stable and doing well." (R. 194, 198, 353). Therefore, the doctor's own notes do not support his opinion that Sanchez is totally disabled. The treating physician's opinion is only entitled to controlling weight if is it not inconsistent with other substantial evidence in the record." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). In this case, the treating physician's opinion was inconsistent with his own examination notes, as well as Dr. Shugart's opinion, who stated that Sanchez would qualify for sedentary work with sit/stand option, and no repetitive bending or twisting, (R. 146) and Dr. Neville's notes, who opined that she retained the capacity to carry out simple tasks in a compatible setting. (R. 217). The statements of three doctors and Sanchez's mother's testimony support the ALJ's finding for a limited range of light work.

Sanchez also claims that when the ALJ noted that she was able to do unskilled work, he disregarded Dr. Neville's finding that she could do "simple tasks in a compatible setting." Sanchez attempts to differentiate "unskilled work" and "simple tasks." She cites to two unreported decisions from the District of Maine stating that whether a job is skilled or unskilled does not speak to whether it is simple. *Hall v. Robert*, 2004 WL 1896969 (D. Me. 2004); *Carter v. Barnhart*, 2005 WL 3263936 (D. Me. 2005). However the Commissioner defines "unskilled

work" as "work which needs little or no judgment to do simple duties that can be learned on the job in short period of time." 20 C.F.R. §404.1568(a). Therefore, simple work is included in the definition of unskilled work, and ALJ Bernstein took Dr. Neville's opinion into account in the RFC finding. In addition to Dr. Neville's finding, Drs. Sands and Crawford both indicated that Sanchez had a light RFC, which entailed up to ten pounds frequent lifting, up to twenty pounds occasional lifting, up to six hours standing/walking, and up to six hours sitting. (R. 220-26). These doctors' conclusions also support the ALJ's findings.

Fourth, Sanchez argues that ALJ Bernstein erred when deciding the weight to be given to differing medical opinions. The ALJ reasonably supported his findings regarding Sanchez's mental and physical limitations with records from doctors and psychologists. He considered the limitations noted by her doctors, but rightfully rejected Dr. Hershberger's ultimate finding that she was "disabled" because that is a legal question for the court. (R. 20–21).

In addition, Commissioner points out that Ms. Porter is a social worker, and therefore unqualified to assess the affects of Sanchez's physical impairments on her ability to work. The ALJ does not need to accept an expert witness's opinion that is outside her field of expertise. *Schmidt v. Apfel,* 201 F.3d 970, 973 (7th Cir. 2000). Therefore, the ALJ appropriately dismissed Ms. Porter's opinion regarding the affects of Sanchez's physical impairments. The doctors' opinions provide substantial evidence to support the ALJ's finding.

(b) *RFC Determination*

Sanchez argues that the ALJ's RFC determination was not supported by substantial evidence. The ALJ found that Sanchez would be able to lift and carry twenty pounds occasionally and ten pounds frequently. She would be required to sit and stand while working, and her relevant impairments would prevent standing and walking more than 50% of an eight hour workday. He found that she could reach extreme postures only occasionally and that she would require atmospheric concentrations comparable to ordinary retail, commercial environments. He found that Sanchez would not be able to perform work that imposes a closely regimented pace of production. This RFC for light work is supported by substantial evidence.

The ALJ was entitled to rely on the vocational expert's ("VE") uncontradicted testimony that a claimant with the specified RFC could perform the positions identified. The VE testified that Sanchez could be a laundry folder, cashier, document preparer or copier, surveillance monitor, or a telephone quotation clerk. (R. 405). The VE cited to these unskilled jobs because Sanchez had no past relevant skills and she was limited by the RFC limitations described during the hearing. (R. 136, 404–05). Therefore, since the VE took Sanchez's limitation, the medical evidence, and the RFC into account, the hypothetical he used was not flawed and the ALJ rightfully relied upon it. *See, e.g., Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004).

(c) *Credibility Analysis*

Sanchez argues that ALJ Bernstein erred when he found that Sanchez was not credible. However, because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record, and he articulates his analysis of the

evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

Here, ALJ Bernstein found that Sanchez was not credible because he felt she tried to present herself as "helpless" and "confused" at the hearing. (R. 18). He stated that she exaggerated and her presentation at the hearing was not consistent with the objective evidence. (R. 18). Specifically, he discredited Sanchez because, while she denied any social activities, "treatment records show that the claimant improved her relationships with her children, traveled to Toledo, Ohio, to visit a friend, had help from her family in painting her home, had regular contract with family members who check in on her, visited her sister, and went to bingo." (R. 18). Sanchez claimed she was depressed, that her pain was so bad she had to lay down up to six hours a day, and that she feels panicky around others. However, her mother reported that Sanchez talks on the phone, uses a computer, takes care of her personal needs, prepares meals, does laundry, dusts, grocery shops, attends appointments, watches television, reads and visits with family. (R. 18). In addition, Sanchez's claim of being too confused to drive is contradicted by medical evidence. (R. 18, 178, 374).

Sanchez argues that her "helpless and confused" demeanor is apparent by reading the transcript. The Court is not convinced. Demeanor is best observed at the hearing and is usually

16

difficult to ascertain later from the written transcript. Therefore, the ALJ's credibility analysis is entitled to special deference. *Powers*, 207 F.3d at 435. ALJ Bernstein observed Sanchez at the hearing and supported his analysis of her demeanor and credibility by citing to contradicting testimony from Sanchez and several third parties. (R. 18).

Next, Sanchez argues that the ALJ erred in his credibility analysis by failing to follow SSR 96-7p, which lists factors to be considered and requires an ALJ to articulate his reasons for finding a claimant not credible. According to SSR 96-7p, in evaluating physical symptoms, the adjudicator should use a two step process: first, he should consider whether there is an underlying medically determinable impairment; and second, he must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. SSR 96-7p.

An ALJ is in the best position to determine a witness's truthfulness and forthrightness, so the court will not overturn an ALJ's credibility determination unless it is "patently wrong." *Skarbek v. Barnhart,* 390 F.3d 500, 504–505 (7th Cir. 2004). This court will uphold a credibility analysis as long as the ALJ gives specific reasons for his finding that the record supports. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

ALJ Bernstein provided substantial support for his finding that Sanchez was not credible. He considered two aspects of her limitations: Sanchez's mental problems and her physical pain. First, he analyzed the credibility of her testimony as to her mental confusion and helplessness in light of the testimony of several doctors, her social worker, her mother, and Sanchez herself. Sanchez's testimony was inconsistent with her doctor's notes and with her

17

mother's testimony about Sanchez's daily life. Second, ALJ Bernstein analyzed her credibility regarding her testimony about her physical limitations. He considered the epidurals Sanchez received for her back pain, her weight gain, the testimony about her back and leg pain, her mother's testimony, and doctor's progress notes. Dr. Hershberger's opinion that Sanchez is disabled was rejected because it was not supported by objective medical observations. (R. 20). The ALJ found that the testimony regarding claimant's daily activities, such as doing laundry, fixing meals, visiting with family, and going grocery shopping, taken with reports from Drs. Bojrab, Shugart, Hershberger, and Canavati did not support a finding that she was disabled. (R. 20–21). The ALJ thus complied with SSR 96–7p by providing specific reasons to support his finding.

**(4)** *The Treatment of Evidence Favorable to Claimant*

Sanchez next argues that the ALJ erred because he ignored evidence that was favorable to Sanchez. Although not required to specifically address every piece of evidence in the record, the ALJ must build a bridge from the evidence to his conclusion. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). The ALJ may not ignore an entire line of evidence that is contrary to his findings, but he "need not provide a complete written evaluation of every piece of testimony and evidence." *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) (citing *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995)). The required bridge is present here, because the ALJ acknowledged that Sanchez was obese, that she did experience some pain, and cited to numerous medical reports demonstrating showing her back and leg treatments. (R. 19). ALJ Bernstein considered these impairments when determining her RFC. Thus, Sanchez has not

18

established that the ALJ's conclusion lacked substantial evidence.

**Conclusion**

In sum, Administrative Law Judge Bernstein did not err when he denied Sanchez's application for disability benefits under the Social Security Act. His mental findings and RFC determination were supported by substantial evidence in the record, including doctor's reports, statements by Sanchez's mother, the vocational expert's testimony, and through live observation of Sanchez in the hearing. In addition, the ALJ's credibility analysis was grounded in the record. Finally, in examining the evidence, the ALJ built the necessary bridge from the evidence to the result. These findings will not be overturned. Therefore, the decision of the Commissioner is affirmed.

SO ORDERED on March 9, 2009.

 s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT COURT